WISCONSIN DEPARTMENT OF REVENUE, Petitioner-Appellant,†

v.

CATERPILLAR, INC., Respondent-Respondent.

Court of Appeals

*No. 00–0284. Submitted on briefs September 12, 2000.—Decided January 11, 2001.*

2001 WI App 35

(Also reported in 625 N.W.2d 338.)

†Petition to review denied.

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *F. Thomas Creeron, III*, assistant attorney general.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Timothy C. Frautschi* and *Maureen A. McGinnity* of *Foley & Lardner* of Milwaukee.

Before Vergeront, Roggensack and Deininger, JJ.

¶ 1. ROGGENSACK, J. The Wisconsin Department of Revenue (DOR) appeals a circuit court judgment affirming the Wisconsin Tax Appeal Commission's interpretation of WIS. STAT. § 71.06(1) (1985–86) to enable the surviving corporation of a pre–1987 merger to offset net operating loss carryforwards against current net operating income in accord with the treatment the Internal Revenue Service (IRS) affords under federal law. Because we conclude that WIS. STAT. § 71.26(4) (1987–88), the renumbered successor to § 71.06(1) (1985–86), permitted Caterpillar, Inc. to make the offsets of net operating

loss carry-forwards which it claimed, we affirm the judgment of the circuit court.

## BACKGROUND

¶ 2. This case reaches us on stipulated facts, which stipulation forms the factual basis for this opin-. ion. Caterpillar Tractor Co. was incorporated in the 1920's in California. In 1986, Caterpillar Tractor Co. changed its company name. Because it also wished to change its state of incorporation when it changed its name, it first incorporated a new entity, Caterpillar, Inc., in Delaware as a wholly owned subsidiary of the existing entity, Caterpillar Tractor Co. Caterpillar Tractor Co. then immediately merged into Caterpillar, Inc., effective May 8, 1986. There was no change in ownership at the time of the merger, as all shares of Caterpillar Tractor Co. common stock were converted into shares of Caterpillar, Inc., and the officers and directors of Caterpillar Tractor Co. continued as the officers and directors of Caterpillar, Inc. No distributions or dispositions of any property were made by reason of the reorganization, with Caterpillar, Inc. succeeding to all the assets, liabilities, rights, privileges and duties of those formerly held by Caterpillar Tractor Co., without limitation. Furthermore, Caterpillar, Inc. maintained Caterpillar Tractor Co.'s federal taxpayer identification number.

¶ 3. For federal income tax purposes, the merger of Caterpillar Tractor Co. into Caterpillar, Inc. was a non-taxable reorganization under IRC § 368(a)(1)(F),[1] because it was defined by the IRS as a "mere change in identity, form, or place of organization of one corporation, however effected." Furthermore, under IRC

---

[1] 26 U.S.C. § 368(a)(1)(F).

§ 381,[2] Caterpillar, Inc. succeeded to all the tax attributes of Caterpillar Tractor Co.

¶ 4.　In 1982, 1983 and 1984, Caterpillar Tractor Co. sustained Wisconsin net operating losses totaling $12,507,684. A portion of that was utilized in 1985, resulting in a net operating loss carry-forward to 1986 of $10,736,275. Caterpillar, Inc. filed Wisconsin corporate franchise returns for each tax year from 1986 through 1990. Pursuant to a DOR audit adjustment, the following offsets were claimed:

| Tax Year | NET OPERATING LOSS OFFSETS (as adjusted) |
|---|---|
| 1986 | $372,565 |
| 1987 | $1,089,409 |
| 1988 | $1,676,938 |
| 1989 | $767,762 |
| 1990 | $266,121 |

¶ 5.　The DOR refused to accept the offsets for the years indicated above and issued assessments for additional franchise taxes it claimed were due. Caterpillar, Inc. appealed to the commission, which agreed with the DOR for 1986 but agreed with Caterpillar, Inc. for 1987 through 1990. The DOR appealed those determinations adverse to it, contending that the statutory revisions that became effective in 1987 were unavailable because the merger that resulted in Caterpillar, Inc. having the assets, liabilities and attributes of Caterpillar Tractor Co. occurred in 1986. The circuit court affirmed the commission, and the DOR again appealed.

[2] 26 U.S.C. § 381.

## DISCUSSION

### Standard of Review.

¶ 6. This case involves the construction of a statute by an administrative agency, where we review the decision of the commission,[3] not that of the circuit court. *Advance Pipe & Supply Co. v. DOR*, 128 Wis. 2d 431, 434, 383 N.W.2d 502, 503 (Ct. App. 1986). Construction of a statute and its application to undisputed or stipulated facts are questions of law. *Truttschel v. Martin*, 208 Wis. 2d 361, 364–65, 560 N.W.2d 315, 317 (Ct. App. 1997). On review of an administrative agency's decision, we are not bound by its conclusions of law. *Currie v. DILHR*, 210 Wis. 2d 380, 387, 565 N.W.2d 253, 257 (Ct. App. 1997). However, we may defer to the commission's legal conclusions. *Id.* The supreme court has established when deference to an agency's legal conclusion is warranted and how much deference reviewing courts should give. *UFE, Inc. v. LIRC*, 201 Wis. 2d 274, 284, 548 N.W.2d 57, 61 (1996). An agency's interpretation or application of a statute may be accorded great weight deference, due weight deference, or *de novo* review. *Id.* We will accord great weight deference only when all four of the following requirements are met: "(1) the agency was charged by the legislature with the duty of administering the statute; (2) . . . the interpretation of the agency is one of

___

[3] Here, there is a conflict between the DOR and the commission. Because the commission is the final administrative authority that reviews the decisions of the DOR, any deference that might be due to the decision of an administrative agency is due to the commission, not to the DOR. *William Wrigley, Jr., Co. v. DOR*, 176 Wis. 2d 795, 801, 500 N.W.2d 667, 670 (1993).

long-standing; (3) . . . the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) . . . the agency's interpretation will provide uniformity and consistency in the application of the statute." *Id.* (citing *Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 660, 539 N.W.2d 98, 102 (1995)). Under the great weight standard, "a court will uphold an agency's reasonable interpretation that is not contrary to the clear meaning of the statute, even if the court feels that an alternative interpretation is more reasonable." *UFE*, 201 Wis. 2d at 287, 548 N.W.2d at 62.

¶ 7. We will accord due weight deference when the "agency has some experience in an area, but has not developed the expertise which necessarily places it in a better position to make judgments regarding the interpretation of the statute than a court." *Id.* at 286, 548 N.W.2d at 62. The deference allowed an administrative agency under due weight review is accorded largely because the legislature has charged the agency with the enforcement of the statute in question. *Id.* Under this standard, we will not overturn a reasonable agency decision that furthers the purpose of the statute unless we determine that there is a more reasonable interpretation under the applicable facts than that made by the agency. *Id.* at 286–87, 548 N.W.2d at 62. Finally, we will apply *de novo* review to an agency's legal conclusion if any one of the following is true: (1) the legal issue is one of first impression; (2) there is no evidence of any special agency expertise or experience in deciding the legal issue presented; or (3) the agency's position on the legal issue has been so inconsistent as to provide no real guidance. *Coutts v. Wisconsin Ret. Bd.*, 209 Wis. 2d 655, 664, 562 N.W.2d 917, 921 (1997). However, we give no deference to an agency's interpre-

tation of a statute if the statute is clear and plain on its face because any deviation from the plain meaning of the statute would be inherently unreasonable. *Lincoln Sav. Bank, S.A. v. DOR*, 215 Wis. 2d 430, 443, 573 N.W.2d 522, 528 (1998). Because we conclude that WIS. STAT. § 71.26(4) is clear and plain on its face, we review the commission's interpretation of that statute *de novo*.

## Net Business Loss Carry-Forwards.

¶ 8. It is undisputed that, through the merger, Caterpillar Tractor Co. changed its name and state of incorporation and that the change was a non-taxable reorganization under IRC § 368(a)(1)(F). Because under this reorganization Caterpillar, Inc. succeeded to Caterpillar Tractor Co.'s tax attributes for federal tax purposes, it also succeeded to Caterpillar Tractor Co.'s net operating loss carryovers under federal law. It is also stipulated that, even though these net operating losses were generated before 1987, the DOR would permit Caterpillar, Inc. to utilize them rather than objecting if the merger had occurred in 1987. Therefore, the question we must resolve is whether the legislature intended that, for the years 1987 forward, Caterpillar, Inc. would receive the same treatment for its net operating loss carry-forwards under state law as the parties agree it was entitled to receive under federal law.

¶ 9. To answer the question presented, we must determine the legislature's intent in federalizing the corporate franchise tax structure with regard to net operating loss carry-forwards. We begin with the words the legislature chose to employ. *Truttschel*, 208 Wis. 2d at 365, 560 N.W.2d at 317. If the words chosen plainly and clearly set forth that intent, our inquiry ends, and

we must apply those words to the facts of the case. *Id.* It is only when the language used in the statute is capable of more than one meaning that we may go beyond the face of the statute. *Id.* at 365–66, 560 N.W.2d at 317.

¶ 10. WISCONSIN STAT. § 71.26 (1987–88),[4] which is an amendment of § 71.06 accomplished by 1987 Wis. Act 27, § 1278(b) and renumbered by 1987 Wis. Act 312, § 2, is central to this appeal. It states in relevant part:

> **(3)** MODIFICATIONS. The income of a corporation shall be computed under the internal revenue code . . . as modified in the following ways:
>
> . . .
>
> (n) Sections 381, 382 and 383 (relating to carry-overs in certain corporate acquisitions) are modified so that they apply to losses under sub. (4) and credits under sec. 71.28(1di), (1dL) and (3) to (5) instead of to federal credits and federal net operating losses.
>
> . . .
>
> **(4)** NET BUSINESS LOSS CARRY-FORWARD. A corporation . . . may offset against its Wisconsin net business income any Wisconsin net business loss

---

[4] Prior to the statutory revisions of 1987, Wisconsin's business loss carry-forward provisions were contained in WIS. STAT. § 71.06 (1985–86). It provided:

**Corporation business loss carry forward. (1)** A corporation may offset against its Wisconsin net business income any Wisconsin net business loss sustained in any of the next 15 preceding income years to the extent not offset by other items of Wisconsin income in the loss year and by Wisconsin net business income of any year between the loss year and the income year for which an offset is claimed. For purposes of this section Wisconsin net business income or loss shall consist of all the income attributable to the operation of a trade or business in this state, less the business expenses allowed as deductions under s. 71.04.

sustained in any of the next 15 preceding taxable years to the extent not offset by other items of Wisconsin income in the loss year and by Wisconsin net business income of any year between the loss year and the income year for which an offset is claimed. For purposes of this subsection Wisconsin net business income or loss shall consist of all the income attributable to the operation of a trade or business in this state, less the business expenses allowed as deductions in computing net income.

In addition, 1987 Wis. Act 27, § 3203(47)(y) provides in part:

*Federalizing the corporate tax; general issues.* The treatment of . . . [numerous sections including] 71.02(1) . . . (bg) . . . of the statutes and the repeal of sec. 71.04 of the statutes first apply to taxable year 1987.

The DOR relies on the language "the statutes first apply to taxable year 1987" to support its contention that the statutory changes do not apply to loss carryforwards accumulated through pre–1987 mergers. Caterpillar, Inc. counters that the quoted phrase simply establishes when the corporation may use net operating loss carry-forwards on its state return in the same manner as it uses them on its federal return.

¶ 11. The supreme court examined the federalization of Wisconsin's corporate franchise tax structure in regard to a different, but analogous, provision in *Lincoln Savings Bank*. There, the supreme court addressed whether federalization permitted Lincoln to subtract its pre–1962 balance of bad debt reserves for federal tax purposes, which reserves had been accumulated before Lincoln was subject to the Wisconsin franchise tax. *Lincoln Sav. Bank*, 215 Wis. 2d at 440,

573 N.W.2d at 526. In concluding that the legislature intended to harmonize state corporate franchise tax determinations with federal taxable income, the supreme court recognized that Wisconsin tax law had been less favorable to the taxpayer than the Internal Revenue Code and that the legislature's intent to change that was evident. *Id.* at 437, 573 N.W.2d at 525. It then put aside the DOR's interpretation of a rule that would have added an additional requirement for bad debts so they could be used "only for years in which a taxpayer was subject to a Wisconsin franchise tax." *Id.* at 446, 573 N.W.2d at 529. Central to the court's reasoning was its acknowledgement that the overall requirements of federalization which the legislature had sought necessitated an outcome that made the tax treatment under state law consistent with that afforded under federal law. *Id.* at 445, 573 N.W.2d at 528.

¶ 12. The creation of WIS. STAT. § 71.26 and other statutory amendments enacted in 1987 that bear on this case are part of the same federalization of Wisconsin's corporate franchise tax structure examined in *Lincoln Savings Bank*. One of the mechanisms used in federalization was to redefine "net income" as gross income computed under the IRC, with certain modifications. WISCONSIN STAT. § 71.26(2)(a) and (3) (1987–88). One of those modifications was the replacement of the federal net operating loss deduction in IRC § 172 with Wisconsin's business loss carry-forward provision, § 71.26(4), for computation of state taxes. The law also modified for Wisconsin taxpayers the provisions of IRC § 381 to permit offset of losses under § 71.26(4) instead of using only federal net operating losses. WISCONSIN STAT. § 71.26(3)(i) and (n) (1989–90). In so doing, Wisconsin essentially adopted IRC § 381

for use by corporations in tax years beginning with 1987. Prior to this amendment, the only way that a corporate taxpayer in Wisconsin could have used net operating losses incurred by a predecessor corporation was to satisfy the "identical taxpayer" rule established in *Fall River Canning Co. v. Wisconsin Dep't of Taxation*, 3 Wis. 2d 632, 89 N.W.2d 203 (1958).

¶ 13. Federalization was a legislative effort to change the law from that set out in *Fall River* and its progeny. Furthermore, we conclude the legislature did so without any statutory ambiguity. We recognize that the commission concluded that § 3203(47)(y) was ambiguous. However, it did so based on what the legislature did *not* say, *not* on the plain words chosen.[5] Creating an ambiguity in the federalization of Wisconsin's corporate franchise tax laws by adding words to those chosen by the legislature was specifically rejected by the supreme court in *Lincoln Savings Bank*:

> [T]o read in the limitation the DOR proposes would frustrate the express legislative goal of equalizing the differences between items of income, loss, or deduction for Wisconsin and federal corporate income tax liability. To judicially insert such a limitation would impermissibly rewrite an already plain legislative rule.

*Lincoln Sav. Bank*, 215 Wis. 2d at 446, 573 N.W.2d at 529. We reject that approach here as well. Further-

---

[5] The commission stated, "We conclude that the language of section 3203(47)(y) is ambiguous since it does not completely address the initial applicability of the federalization of IRC section 381. Specifically, the language of section 3203(47)(y) does not tell us whether the federal treatment is limited to corporate reorganizations in 1987 or thereafter."

more, it makes little sense that the legislature would have enacted a comprehensive statutory scheme to effect federalization and have precluded the use of net operating loss carry-forwards in a merger of this type. We agree with Caterpillar, Inc. that, just because it did not have the right to deduct these losses in the year of the merger, it does not follow that these losses were extinguished. Rather, they did not begin to produce a valuable Wisconsin tax benefit until federalization of the Wisconsin corporate franchise tax structure was effective in 1987. Accordingly, we affirm the decision of the circuit court which had affirmed the commission.

## CONCLUSION

¶ 14. Because we conclude that WIS. STAT. § 71.26(4) (1987–88), the renumbered successor to § 71.06(1) (1985–86), permitted Caterpillar, Inc. to make the offsets of net operating loss carry-forwards which it claims, we affirm the judgment of the circuit court.

*By the Court.*—Judgment affirmed.