Town of Barton, Petitioner-Respondent,†

v.

Division of Hearings and Appeals, Respondent,
City of West Bend, Interested Party-Appellant.

Court of Appeals

*No. 01–1209. Submitted on briefs December 7, 2001.—Decided
June 6, 2002.*

2002 WI App 169

(Also reported in 649 N.W.2d 293.)

† Petition to review denied 9-26-02.

On behalf of the interested party-appellant, the cause was submitted on the briefs of *Richard C. Yde*, of *Stafford Rosenbaum LLP*, of Madison.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Timothy J. Andringa* of *Cramer, Multhauf & Hammes, LLP* of Waukesha.

Brief of amicus curiae was filed by *Daniel M. Olson* of *League of Wisconsin Municipalities* of Madison on behalf of *League of Wisconsin Municipalities*.

Before Dykman, Roggensack and Deininger, JJ.

¶ 1. ROGGENSACK, J. The City of West Bend appeals the circuit court's reversal of a decision of the Division of Hearings and Appeals of the Department of Administration (DHA), wherein DHA ordered the Town of Barton to permit the City to install a sanitary sewer interceptor and laterals in two highways in the Town, pursuant to its authority under WIS. STAT. § 86.16(5) (1999–2000).[1] The circuit court reversed DHA because it concluded that DHA did not have jurisdiction to review the Town's refusal to grant

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

permission to the City to build the sewer interceptor, or in the alternative, because DHA should have required the City to permit abutting land owners to immediately connect to city sewer through the laterals DHA required as a condition of its order. Because we conclude DHA had authority under § 86.16(5) to determine whether, and on what conditions, the City could build a sanitary sewer in highways in the Town, and because the circuit court's decision that if the sewer interceptor is constructed the residents who abut the highway must be permitted to hook up immediately is not more reasonable than DHA's decision, we reverse the decision of the circuit court and remand to reinstate DHA's order.

## BACKGROUND

¶ 2. The City designed an addition to its sanitary sewer system that it refers to as the "Northwest Interceptor." This interceptor is to assist in providing sewer service for three areas of the City: the "Wink lands," anticipated expansion of the Moraine Park Technical College and anticipated growth of "Young America." It will also eliminate a lift station. The City needed the Town's permission to construct a 2640–foot segment of the Northwest Interceptor in the rights-of-way of River Drive and Woodford Drive that are located in the Town.

¶ 3. In a letter dated August 7, 1996, the City requested permission. The Town refused to permit the construction unless all of the Town's residents who abut the interceptor were given immediate sewer system access. The City denied the Town's access request because it has a policy of not providing sewer access to properties located outside of the City. It proposed to wait to provide service until annexation of the properties. However, the City agreed to construct laterals as

part of the interceptor's initial installation, thereby avoiding any further disruption of the highways in the event that the properties adjacent to the interceptor were later provided sewer service.

¶ 4. The Town refused permission, and the City appealed the refusal to DHA pursuant to Wɪs. Sᴛᴀᴛ. § 86.16(5). DHA held a hearing and concluded that under § 86.16(5) and Wɪs. Sᴛᴀᴛ. § 227.43(1)(bg), DHA had jurisdiction to hear the City's appeal, and it ordered the Town to grant the City a permit to construct and maintain the proposed sewer interceptor within the rights-of-way of River Drive and Woodford Drive, conditioned on the City's installing laterals and keeping at least one lane of traffic open on each roadway during construction.

¶ 5. The Town appealed, and the circuit court concluded that DHA did not have jurisdiction over the City's appeal. In the alternative, the circuit court also concluded that if DHA did have jurisdiction under Wɪs. Sᴛᴀᴛ. § 86.16(5), DHA should have ordered that the Town residents who abut the interceptor be permitted to connect to sewer service immediately. The City appeals.

## DISCUSSION

### Standard of Review.

■

¶ 6. The scope of an agency's authority to act is a legal issue that we review *de novo*. *Loomis v. Wisconsin Pers. Comm'n*, 179 Wis. 2d 25, 30, 505 N.W.2d 462, 464 (Ct. App. 1993).

■

¶ 7. When we review the merits of the decision previously made, we review the agency's decision, not

that of the circuit court. *Gordon v. State Med. Examining Bd.*, 225 Wis. 2d 552, 556, 593 N.W.2d 481, 483 (Ct. App. 1999). We will not disturb an agency's factual findings if they are supported by credible and substantial evidence. *CBS, Inc. v. LIRC*, 219 Wis. 2d 564, 570, 579 N.W.2d 668, 671 (1998). DHA's statutory construction and its application of a statute to undisputed facts are questions of law, and we are not bound by an agency's legal conclusions. *DOR v. Caterpillar, Inc.*, 2001 WI App 35, ¶ 6, 241 Wis. 2d 282, 625 N.W.2d 338. However, under some circumstances, we may deem it appropriate to grant deference to the legal conclusions of an administrative agency. *See Behnke v. DHSS*, 146 Wis. 2d 178, 184, 430 N.W.2d 600, 602 (Ct. App. 1988).

¶ 8. An agency's interpretation or the application of an ambiguous statute may be accorded great weight deference, due weight deference or *de novo* review, depending on the circumstances. *UFE Inc. v. LIRC*, 201 Wis. 2d 274, 284, 548 N.W.2d 57, 61 (1996). We accord great weight deference only when all four of the following requirements are met: (1) the agency was charged by the legislature with the duty of administering the statute; (2) the agency's interpretation is of long standing; (3) the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) the agency's interpretation will provide uniformity and consistency in the application of the statute. *Id.*

¶ 9. We will accord due weight deference when "the agency has some experience in an area, but has not developed the expertise which necessarily places it in a better position to make judgments regarding the interpretation of the statute than a court." *Id.* at 286, 548 N.W.2d at 62. The deference allowed under the due

weight standard is accorded largely because the legislature has charged the agency with the enforcement of the statute in question. *Id.* Under this standard, we will not overturn a reasonable agency decision that furthers the purpose of the statute unless we determine that there is a more reasonable interpretation than that made by the agency. *Id.* at 286–87, 548 N.W.2d at 62.

¶ 10. Here, DHA has been charged with administering Wis. Stat. § 86.16(5), and it has some experience, even though its experience is not of long standing because the Transportation Commission formerly was responsible for appeals, *see City of Appleton v. Transportation Comm'n*, 116 Wis. 2d 352, 342 N.W.2d 68 (Ct. App. 1983). Accordingly, if we conclude that the scope of DHA's authority extends to this controversy, we will apply due weight deference to DHA's order directing the Town to grant permission to the City to construct the Northwest Interceptor, conditioned on the City's meeting DHA's requirements.

## Scope of DHA's Authority.

¶ 11. The circuit court concluded that Wis. Stat. § 86.16(5) provided no authority for DHA to resolve the dispute about whether, and on what terms, the City would be permitted to build a portion of the Northwest Interceptor in two highways within the Town. The court was persuaded that any review of the Town's refusal to issue a permit to build the interceptor had to be found in sections of the statutes other than § 86.16. The Town agrees with the circuit court's position and focuses its argument to us on terms used in § 86.16(1), contending § 86.16 applies to laying pipelines that transport fresh water, not to those that transport waste water. Therefore, the Town argues that because § 86.16(1) does not apply to the proposed con-

struction in the first instance, § 86.16(5) does not give DHA authority to resolve this dispute between the Town and the City. The City contends that the statute employs only general categories of substances that may be transported within pipelines that can be constructed in public ways and that "water" is a broad enough category to include waste water as well as fresh water. Therefore, argues the City, DHA's review of the Town's denial is proper under subsec. (5).

¶ 12. These conflicting positions present a question of statutory construction that involves the scope of DHA's authority. Therefore, we decide it without deference to DHA's interpretation of the statute. *Loomis*, 179 Wis. 2d at 30, 505 N.W.2d at 464. When we are asked to apply a statute whose meaning is in dispute, we direct our efforts at determining what the legislature intended the statute to mean. *Truttschel v. Martin*, 208 Wis. 2d 361, 365, 560 N.W.2d 315, 317 (Ct. App. 1997). We begin with the words chosen by the legislature. WISCONSIN STAT. § 86.16 states in relevant part:

> (1) Any person, firm or corporation . . . may . . . with the written consent of local authorities with respect to highways under their jurisdiction, including connecting highways, construct and operate telegraph, telephone or electric lines, or pipes or pipelines for the purpose of transmitting messages, water, heat, light or power along, across or within the limits of the highway.
>
> . . . .
>
> (5) Any person, firm or corporation whose written application for permission to construct such lines within the limits of a highway has been refused, or has been on file with the . . . local authority for 20 days and no action has been taken thereon, may file with the . . .

local authority a notice of appeal to the division of hearings and appeals .... [T]he division of hearings and appeals shall hear and try and determine the appeal on 10 days' notice to the ... local authority, and the applicant.

¶ 13. In determining whether "water" includes both fresh water and waste water, we begin with the plain meaning of the statute. *Truttschel*, 208 Wis. 2d at 365, 560 N.W.2d at 317. If the language chosen unambiguously sets forth the legislature's intent, we go no further. *Id.* On the other hand, if the language used in the statute is capable of more than one reasonable meaning, we will determine legislative intent from the words of the statute in relation to their context, the subject matter, scope and history of the statute, as well as the purpose the legislature was attempting to accomplish by enacting the statute. *Id.* at 365–66, 560 N.W.2d at 317. However, a statute is not ambiguous merely because two parties contend it ought to be interpreted in different ways. *State v. Orlik*, 226 Wis. 2d 527, 534, 595 N.W.2d 468, 472 (Ct. App. 1999).

¶ 14. We note that "water" is not modified by either "fresh" or "waste," and that WIS. STAT. § 86.16 refers to the placement of many types of utilities within "highways." Highways[2] are defined as:

[A]ll public ways and thoroughfares and bridges on the same. It includes the entire width between the boundary lines of every way open to the use of the public as a matter of right for the purposes of vehicular travel.

WIS. STAT. § 340.01(22). Therefore, the words chosen by

[2] The Town does not contend that River Drive and Woodford Drive are not "highways" within the scope of WIS. STAT. § 86.16.

the legislature provide for the placement of pipelines for utilities in public lands. Because the proposed placements of the interceptor are in public ways, the issue presented is not similar to that presented in *Danielson v. City of Sun Prairie*, 2000 WI App 227, 239 Wis. 2d 178, 619 N.W.2d 108, where an interceptor was constructed on private property that had to be condemned under ch. 32 procedures. No condemnation is involved when utility construction occurs in public ways.

¶ 15. While placement of an interceptor in a highway does not require condemnation, it does allow a town in which construction is to occur to assure that the placement of a utility's pipeline will not unreasonably disrupt traffic on highways within the town's boundaries. *See Milwaukee Elec. Ry. & Light Co. v. City of Milwaukee*, 209 Wis. 668, 671, 245 N.W. 860, 861 (1932). We can see no reason why we should interpret "water" in WIS. STAT. § 86.16(1) as being limited to "fresh water," thereby permitting one utility that transports water for the benefit of the public to use the public ways for laying its pipelines and not include another utility, simply because that utility transports "waste water." Additionally, any disruption in traffic on the highways would not be related to the type of water that the pipelines transport. Accordingly, we conclude that the "pipelines" to transport "water" referred to in § 86.16(1) unambiguously include wastewater as well as freshwater pipelines. Therefore, it follows as a matter of course that review of the Town's refusal to grant permission to the City to construct the interceptor is within the scope of DHA's authority under § 86.16(5).

**DHA's Order.**

¶ 16. DHA ordered the Town to grant the City permission to construct and maintain the Northwest Interceptor within the rights-of-way of River Drive and Woodford Drive in the Town. It also ordered the City to construct laterals up to the property lines of the abutting properties to ensure that at all times there is adequate access to the residences to accommodate emergency vehicles. In coming to this conclusion, the DHA framed the issue it was required to decide as follows: "[W]hether the construction and maintenance of the proposed sewer will result in an unreasonable obstruction to traffic on a public highway." That is the correct formulation of the issue underlying whether permission has been properly withheld. As the supreme court explained, "Sec. 86.16 grants to towns authority in the nature of police powers so that public highways may not be unreasonably obstructed by [construction and maintenance of lines]." *Milwaukee Elec.*, 209 Wis. at 671, 245 N.W. at 861.

¶ 17. However, a public utility acquires the right to construct its lines in highways that are within the boundaries of a town directly from the State. *Id.* (citing *South Shore Util. Co. v. Railroad Comm'n*, 207 Wis. 95, 240 N.W. 784 (1932)). Therefore, the authority of a town to deny permission to a utility to construct its pipelines in the public highways within the town's control is limited both by the grant of authority from the legislature to the utilities and by the scope of a town's police power. Stated another way, the power to permit or to deny permission that a town is given under WIS. STAT. § 86.16 is not a bargaining chip that a town can

use to force a city to provide services to town residents that a city would not otherwise provide under its normal procedures and policies. Accordingly, the Town had no authority to require the City to permit immediate hookup to the sewer, so long as the City's refusal to do so did not cause an unreasonable obstruction to traffic within the Town. Therefore, the circuit court's decision was not more reasonable than DHA's which required both of the following conditions: (1) laterals to eliminate the need for future construction, if the abutting properties become eligible for city sewer,[3] and (2) sufficient flow of traffic to ensure that police and fire trucks would not be impeded as they provide service to residents of the Town. Accordingly, we reverse the order of the circuit court and remand to reinstate DHA's order.

---

[3] Both the DHA hearing examiner and the circuit court were concerned about the applicability of WIS. ADMIN. CODE § Comm 83.01(2)(b) (1997), which formerly provided:

> Every building intended for human habitation or occupancy on land abutting a street, right-of-way, or easement in which there is a public sewer, or on land deemed accessible to public sewer, shall have an individual connection to the public sewer and the private sewage system serving such building shall be properly abandoned.

This provision is no longer in force, effective March 1, 2000. Therefore, we do not address it further in this opinion.

The Town also contends that the City cannot delay hookups to the sewer because of Washington County's requirements. However, how the County will interpret its own ordinance is not before us. It could be that the County will not deem sewer service "available" until the City says that it is. We leave this question to another day when the County can, if it chooses, address the issue. *Truttschel v. Martin*, 208 Wis. 2d 361, 369, 560 N.W.2d 315, 318–19 (Ct. App. 1997) (concluding that we will not address issues unless they have been sufficiently developed).

## CONCLUSION

¶ 18. Because we conclude DHA had authority under WIS. STAT. § 86.16(5) to determine whether, and on what conditions, the City could build a sanitary sewer in highways in the Town, and because the circuit court's decision that if the sewer interceptor is constructed the residents who abut the highway must be permitted to hook up immediately is not more reasonable than DHA's decision, we reverse the decision of the circuit court and remand to reinstate DHA's order.

*By the Court.*—Order reversed and cause remanded with directions.